# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JAX LEASING, LLC, etc., | ) |
| | ) **PUBLISH** |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 18-0490-WS-B |
| | ) |
| XIULU RUAN, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for remand. (Doc. 5). The defendant United States of America has filed a response and the plaintiff a reply, (Docs. 8, 9), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

The plaintiff filed this action against defendant Ruan in state court, alleging a six-figure debt arising from its storage of Ruan's vehicles. The complaint names the United States as an additional defendant because Ruan has been convicted of multiple federal offenses for which he received a sentence including an eight-figure restitution obligation, and the United States has filed a notice of lien in state probate court to enforce the restitution obligation. (Doc. 1-3 at 1; Doc. 8 at 1-2). The complaint includes claims for breach of contract, declaratory judgment (confirming the breach and that the plaintiff holds a valid and enforceable warehouse lien), and judicial foreclosure. The latter claim seeks an order that the vehicles be sold and that the United States receive no proceeds of the sale until and unless the plaintiff's claim be first entirely satisfied. (Doc. 1-3 at 11-14).

The United States removed this action pursuant to 28 U.S.C. § 1442(a)(1). (Doc. 1). The plaintiff moves to remand, arguing that the United States cannot satisfy the requirements for removal under that provision.

**DISCUSSION**

**I. Section 1444.**

"Any action brought under section 2410 of this title against the United States … may be removed by the United States …." 28 U.S.C. § 1444. "[T]he United States may be named a party in any civil action or suit in … any State court having jurisdiction of the subject matter … to foreclose a mortgage or other lien upon … real or personal property in which the United States has or claims a mortgage or other lien." *Id*. § 2410(a)(2). This action appears to fall within the parameters of Section 2410 so as to permit its removal under Section 1444.

The United States, however, did not invoke Section 1444 in its notice of removal. A notice of removal is required to be filed within 30 days after service of process, 28 U.S.C. § 1446(b), and numerous authorities have held that "[t]he Notice of Removal cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." *ARCO Environmental Remediation, L.L.C. v. Department of Health and Environmental Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000).[1] The United States' brief in opposition to the motion for remand was filed seven weeks after service on the United States Attorney and Attorney

---

[1] *Accord Wood v. Crane Co*., 764 F.3d 316, 323 (4th Cir. 2014); *Rafter v. Stevenson*, 680 F. Supp. 2d 275, 277-78 (D. Me. 2010); *Geismann v. Aestheticare, LLC*, 622 F. Supp. 2d 1091, 1095-96 (D. Kan. 2008); *Whitehead v. The Nautilus Group, Inc*., 428 F. Supp. 2d 923, 928-29 (W.D. Ark. 2006); *Uppal v. Electronic Data Systems*, 316 F. Supp. 2d 531, 535-36 (E.D. Mich. 2004); *Hinojosa v. Perez*, 214 F. Supp. 2d 703, 707 (S.D. Tex. 2002); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3733 (3rd ed. 1998); *cf. Ervast v. Flexible Products Co*., 346 F.3d 1007, 1012 n.4 (11th Cir. 2003) (declining to consider a basis for removal first raised on appeal, because the removing defendant "had the burden to plead this basis in its notice of removal, and it did not").

General. (Doc. 1 at 2). Its invocation of Section 1444 is therefore untimely under the authorities cited above. Because the United States does not argue that its invocation of Section 1444 is timely or that its untimely invocation should be excused, the Court will not consider that provision as a basis of removal jurisdiction.

**II. Section 1442(a)(1).**

> (a) A civil action … that is commenced in a State court and that is against or directed to any of the following may be removed by them [to federal court]:
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ….

28 U.S.C. § 1442(a)(1).[2]

The plaintiff raises three arguments why removal under this provision is improper: (1) the complaint is not "against or directed to" the United States; (2) the complaint does not allege an "act under color of such office" that forms the "basis for [the] relief" demanded; and (3) the United States cannot "raise a colorable defense arising out of its duty to enforce federal law." (Doc. 5 at 2-4).

**A. "Against or Directed to."**

The plaintiff asserts that the complaint "does not state a claim against" the United States and that the United States is named as a defendant only as an indispensable party, under the state analogue to Rule 19(a)(1)(B)(i), because foreclosing the plaintiff's lien in the absence of the United States might as a practical matter impair the United States' ability to protect its claimed lien interest. (Doc. 5 at 2).

---

[2] The relevant portion of Section 1442(a)(1) has so read since 2011. The two immediately previous versions of the relevant statutory language, as it read before the amendments of 1996 and 2011, are set forth *infra* in notes 6 and 9.

3

An indispensable party, however, is still a party, and the United States is denominated by the complaint as a party defendant. (Doc. 1-3 at 11). The plaintiff's express purpose in naming the United States is to judicially establish that the plaintiff's lien primes the United States' competing lien. (*Id*. at 14). The plaintiff may not seek an affirmative recovery from the United States, but it does seek to recover from Ruan proceeds that otherwise would be recovered by the United States. It is difficult to imagine a more adversarial relationship, and the plaintiff offers no authority in support of its unlikely position.

"The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (internal quotes omitted).[3] As discussed in Part II.D, the United States has a statutory obligation to enforce restitution orders. A judgment that the plaintiff's lien against the subject vehicles primes the United States' lien against the same property would render it more difficult for the United States to recover assets and would thus interfere with the public administration regarding the enforcement of restitution orders.

For reasons expressed above, the Court concludes that this action is against the United States for purposes of Section 1442(a)(1).

**B. "The United States or Any Agency Thereof."**

Before considering the plaintiff's two remaining arguments, the Court must determine whether the requirements for removal that the plaintiff identifies – an act under color of office and a colorable federal defense – apply to the United

---

[3] While *Pennhurst* was decided in the Eleventh Amendment context, it gives a sense of the breadth of the term.

States and its agencies in the first place. The plaintiff, relying chiefly on *Mesa v. California*, 489 U.S. 121 (1989), believes they do.[4] The Court disagrees.

*Mesa* did not involve an action against the United States; the removing parties, as in most cases involving Section 1442(a)(1), were individuals (specifically, postal service employees). 489 U.S. at 123. Nor did *Mesa* involve Section 1442(a)(1) as it now reads; until a 1996 amendment added, "[t]he United States or any agency thereof,"[5] Section 1442(a) addressed only individuals. *Id*. at 124-25.[6] It is in that context that *Mesa* must be read.

Now, as at the time *Mesa* was decided, Section 1442(a)(1) identifies the individuals potentially able to remove as: (a) any officer of the United States or of an agency of the United States; and (b) any person acting under such officer. Both then and now, such a person may remove a civil action if it is for "any act under color of such office." The "colorable federal defense" requirement, 489 U.S. at 129, which does not appear in the text of Section 1442(a), was identified by the *Mesa* Court as flowing directly from the "act under color of such office" statutory language. *Id*. at 125, 134.[7] The holding of *Mesa* – which involved only individual

---

[4] Beyond *Mesa*, the plaintiff relies only on a single District Court case that, in *dicta*, assumed rather than demonstrated that an agency must assert a colorable federal defense.

[5] Pub. L. No. 104-317, § 206(a)(2)(B), 110 Stat. 3850.

[6] From 1948 to 1996, the relevant portion of Section 1442(a)(1) read as follows:

A civil action … commenced in a State court against any of the following persons may be removed by them [to federal court]:
    (1) Any officer of the United States or any agency thereof, or
person acting under him, for any act under color of such office ….

*Mesa*, 489 U.S. at 124-25.

[7] "California … would have us read the same phrase ["under color of such office"] to impose a requirement that some federal defense be alleged by the federal officer seeking removal." 489 U.S. at 125. "The critical phrase [for deciding whether a colorable federal defense is required is] 'under color of office' …." *Id*. at 134.

defendants and addressed statutory language applicable only to individual defendants – is thus limited to the proposition that "[f]ederal *officer* removal under 28 U.S.C. § 1442(a) must be predicated upon averment of a federal defense." *Id*. at 139 (emphasis added).

Under *Mesa*, the colorable-federal-defense requirement is tied to the act-under-color-of-such-office requirement. Unless the latter requirement applies to the United States and its agencies, the former requirement cannot apply, either. For the reasons that follow, the Court concludes that neither applies.

The Eleventh Circuit apparently has not decided whether the United States as a defendant must assert a colorable federal defense in order to remove under Section 1442(a)(1),[8] but the Sixth Circuit has done so. In *City of Cookeville v. Upper Cumberland Electric Membership Corp.*, 484 F.3d 380 (6th Cir. 2007), the Court analyzed the text of Section 1442(a)(1)[9] and the legislative history of the 1996 amendment that added "[t]he United States or any agency thereof" to the list of those capable of removing under that provision. The *City of Cookeville* Court concluded that the proper reading of the statute is "that the three entities that can

---

[8] *See City of Jacksonville v. Department of the Navy*, 348 F.3d 1307, 1313 n.2 (11th Cir. 2003) ("We recognize that it remains to be decided whether the requirement of a federal defense also applies to removal by the United States or one of its agencies.").

[9] From 1996 to 2011, the relevant portion of Section 1442(a)(1) read as follows:

A civil action … commenced in a State court against any of the following may be removed by them [to federal court]:
    (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ….

Pub. L. No. 104-317, § 206(a), 110 Stat. 3850.

remove are (1) the United States; (2) any agency thereof; or (3) any officer of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." *Id*. at 389. Because the requirement of a colorable federal defense flows from the "act under color of such office" language, and because that language does not apply to the United States or its agencies, such defendants "can always remove under § 1442(a)(1)." *Id*.

The Sixth Circuit reasoned that nothing in the syntax or punctuation of Section 1442(a)(1) compels reading "act under color of such office" to apply to the United States or its agencies; that such a reading (as the Supreme Court has indicated) "does not make sense," since entities such as a sovereign and its agencies do not act in an "official or individual capacity" or "under color of an office"; that the legislative history clearly delineates between "agencies" on the one hand and "officers sued in either an individual or official capacity" on the other; and that Congress and the Supreme Court have instructed the courts to construe Section 1442(a) broadly in favor of removal. *Id*. at 389-90.

The *City of Cookeville* Court also noted that, unlike in *Mesa*, a construction of Section 1442(a)(1) to require a colorable federal defense of the United States or its agencies is not necessary to preserve the statute's constitutionality. As the *Mesa* Court recognized, the absence of a colorable federal defense requirement in the case of officer removal "would … present grave constitutional problems" since, without such a requirement, removal could occur without any federal question sufficient to satisfy Article III's grant of judicial power to hear cases "arising under" federal law, and with no alternative fount of jurisdiction apparent. 489 U.S. at 136-37. In contrast, because Article III extends the judicial power "to Controversies to which the United States shall be a Party," U.S. Const. art. III, § 2, cl. 1, no federal defense requirement is needed to ensure the constitutionality of removal by the United States or its agencies. 484 F.3d at 391; *see also In re: Meyerland Co.*, 910 F.2d 1257, 1260 (5th Cir. 1990) ("Even though the only issues

7

to be decided are ones of state law, Article Three permits the exercise of jurisdiction if one of the parties is a federal corporation.").[10]

Several district courts outside the Sixth Circuit have agreed with *City of Cookeville*,[11] and the Court has discovered no appellate or trial court to have disagreed with its analysis or conclusion. The Court agrees with these authorities that the United States and its agencies may remove under Section 1442(a)(1) regardless of whether they assert a colorable federal defense or act under color of office. In doing so, the Court adds the following to the Sixth Circuit's analysis.

Although the rule is not always honored, "our inquiry into the meaning of [a] statute's text ceases when the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Matal v. Tam*, 137 S. Ct. 1744, 1756 (2017) (internal quotes omitted). The Court considers Section 1442(a)(1) to be unambiguous, and its scheme coherent and consistent, obviating resort to legislative history. In order for the United States and its agencies to be subject to the "colorable federal defense" requirement applicable to individuals, Section 1442(a)(1) as it stood following the 1996 amendment must be read as limiting removal to "[t]he United States or any agency thereof ... sued in an official or individual capacity for any act under color of such office." As the Sixth Circuit noted, this reading may be grammatically defensible, but it "does not make sense" because, unlike federal officers, the United States and its agencies are not "sued in

---

[10] Satisfying the Constitution is alone insufficient to support federal jurisdiction, because Article III is not self-executing. "The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it." *Kline v. Burke Construction Co.*, 260 U.S. 226, 234 (1922); *accord Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."). However, Section 1442(a) is itself such a jurisdictional statute, "grant[ing] district court jurisdiction over cases in which a federal officer is a defendant." *Mesa*, 489 U.S. at 136.

[11] *City of Orlando v. Associated Press*, 2016 WL 4473185 at *2 (M.D. Fla. 2016); *In re: Estate of Wisler*, 2016 WL 305179 at *2 n.2 (S.D. Ind. 2016); *Fulgham v. Housing Authority*, 2011 WL 4566447 at *2 & n.9 (D. Md. 2011); *Village of Wheeling v. Fragassi*, 2010 WL 3087462 at *3 (N.D. Ill. 2010); *Cox v. Hegvet*, 2009 WL 1407009 at *4-5 (D. Idaho 2009).

an official or individual capacity," nor are they "sued … for any act under color of … office."  480 F.3d at 389.

Moreover, Section 1442(a)(1) speaks of acting under color of "such office," which necessarily refers to an office previously identified in the text.  The statute does not identify the United States or any agency as holding any office (unsurprising, since they do not), but it does identify "any officer … of the United States or of any agency thereof."  Therefore, the "act under color of such office" language can refer only to the "office" held by the "officer" at issue.

Not only does the "such office" language plainly restrict the clause to "officer" removal, this reading also accords with the "rule of the last antecedent." Under that rule, "a limiting clause or phrase … should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 136 S. Ct. 958, 962 (2016) (internal quotes omitted).  Under the rule of the last antecedent, the "official or individual capacity" and "under color of such office" qualifiers are to be read as restricting only removal by federal officers, because federal officers constitute the final category in the list of those that can remove under Section 1442(a)(1).  The rule is most easily applied when, as here, the listing "does not contain items that readers are used to seeing listed together[, does not contain] a concluding modifier that readers are accustomed to applying to each of them," and as to which "the varied syntax of each item in the list makes it hard for the reader to carry the final modifying clause across all three."  *Id*. at 963.

"Of course, as with any canon of statutory interpretation, the rule of the last antecedent is not an absolute and can assuredly be overcome by other indicia of meaning."  *Lockhart*, 136 S. Ct. at 963 (internal quotes omitted).  Here, however, such indicia are lacking; indeed, all indicia point the same way as the rule of the last antecedent.  First, and as discussed above, it is nonsensical to speak of the United States or its agencies as being sued in an individual capacity when they have none or as being sued for acts under color of an office when they hold none.

Second, and as also discussed above, "such office" can only refer to an office previously referenced, which is limited to federal officers.

Third, prior to the 1996 amendment, Section 1442(a)(1) explicitly extended only to federal officers, and thus its language about acts under color of such office plainly were designed to address only officers, not the United States or its agencies. The 1996 amendment simply patched on the phrase, "[t]he United States or any agency thereof" to the beginning of subparagraph (1), which indicates a stand-alone addition, not an integration into the entire pre-existing language. This is especially telling given that "[i]t is presumable that Congress legislates with knowledge of our basic rules of statutory construction." *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496 (1991). Thus, even though Congress recognized that courts would employ the rule of the last antecedent,[12] it used no language or other device to indicate that it intended a different reading.

Fourth, when Congress passed the 1996 amendment, it was keenly aware of the Supreme Court's decision in *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991) ("*Primate*"), which ruled that Section 1442(a)(1) as it then read did not permit removal by federal agencies.[13] The Supreme Court held that the statutory language permitting removal by "[a]ny officer of the United States or any agency thereof, or person acting under him," did not mean that an agency could remove but only that an officer of any agency could do so. *Id*. at 79-80. The Supreme Court rejected a contrary reading, in part, because the subsequent language "that limits exercise of the removal power to suits in which the federal defendant is challenged for 'any act under color of such office' reads very awkwardly if the prior clauses refer not

---

[12] Although *Lockhart* was decided after the 1996 amendment, "[t]his Court has applied the rule from our earliest decisions to our more recent." 136 S. Ct. at 963 (citing cases from 1799, 1959 and 2003).

[13] Indeed, the 1996 amendment was a direct response to that decision. *City of Cookeville*, 484 F.3d at 389.

10

only to persons but to agencies. An agency would not normally be described as exercising authority 'under color' of an 'office.'" *Id*. at 80. Such a reading "simply does not accord with the statute's language and structure." *Id*.

*Primate* is important because, when Congress acts, it "is presumed to be aware of an administrative or judicial interpretation of a statute …." *Forest Grove School District v. T.A*., 557 U.S. 230, 239 (2009) (internal quotes omitted). It must therefore be presumed that Congress, when it passed the 1996 amendment, recognized that general language allowing removal "by the United States or any agency thereof" would not suffice to limit removal by these entities to suits against them for "acts under color of such office." Congress's failure, despite this knowledge, to employ language manifesting an intent to so limit removal further demonstrates that Congress intended no such limitation.[14]

"When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n.29 (1978); *see also United States v. Woods*, 571 U.S. 31, 46 n.5 (2013) ("Whether or not legislative history is ever relevant, it need not be consulted when, as here, the statutory text is unambiguous."). For reasons explained above, the Court concludes that Section 1442(a)(1) unambiguously permits removal by the United States and its agencies irrespective of whether they assert a colorable federal defense or act under color of office. The Court therefore finds it unnecessary to consider the legislative history of the 1996 amendment. Nevertheless, because the *City of Cookeville* Court addressed that history, the Court does so as well.

---

[14] As discussed in note 10, *supra*, effective removal requires a valid congressional grant of jurisdiction. As noted therein, *Mesa* held that Section 1442(a)(1) grants such jurisdiction with respect to removal by federal officers. Because Congress did nothing to unsettle that conclusion when it provided for removal by the United States and its agencies, Section 1442(a)(1) must be deemed to grant any necessary jurisdiction with respect to them as well.

11

The known legislative history of the 1996 amendment is contained in two brief discussions in the committee reports. The Senate report addressing the amendment is confined to two paragraphs.[15] The House report consists of a verbatim repetition of these two paragraphs, plus a third paragraph that does not appear in the Senate report.[16] The Sixth Circuit described the Senate report as "provid[ing] compelling confirmation of this reading" of Section 1442(a)(1), *i.e.*, that "a federal agency defendant may remove without more." 484 F.3d at 390. The Court does not share that opinion but agrees that the legislative history is insufficient to support the construction urged by the plaintiff.

The Sixth Circuit stressed that the Senate report speaks of suits "against federal agencies as well as those against federal officers sued in either an individual or official capacity"[17] and concluded that the report, "therefore, demonstrates that the 'sued' clause applies only to federal officers and not to federal agencies." 484 F.3d at 390. The Court agrees that this is the most reasonable reading of the report, but it sees a less likely alternative reading: that the categories of defendants that may remove include both (a) agencies and (b) federal officers (whether sued in an official or an individual capacity), with both categories subject to the "for any act under color of such office" language. As with the text of Section 1442(a)(1), the Court finds such a construction, though possible, contrary to any sensible understanding of the quoted term.

Only one other item in the Senate report seems capable of reflecting on the congressional intent at issue here. In their final, identical sentence (which was not addressed by the Sixth Circuit), both congressional reports state as follows: "This

---

[15] S. Rep. No. 104-366, *reprinted in* 1996 U.S.C.C.A.N. 4202, 4210-11, 1996 WL 520492 at *30-31 (Sept. 9, 1996).

[16] H.R. Rep. 104-798, 1996 WL 532692 at *19-20 (Sept. 17, 1996).

[17] 1996 U.S.C.C.A.N. at 4210-11, 1996 WL 520492 at *30-31. The House report uses identical language. 1996 WL 532692 at *19-20.

section does not alter the requirement that a federal law defense be alleged for a suit to be removable pursuant to 28 U.S.C. § 1442(a)(1)."[18] It is thus clear that the 104th Congress considered the requirement of a colorable federal defense. Less clear is what it contemplated. One reading is that Congress meant only to preserve the requirement in its existing context of removal by federal officers (the only context in which the requirement was capable of "alter[ation]"), with the sentence added to ensure that the amendment's rewording of the statute (including its insertion of "sued in an official or individual capacity") did not lead courts to erase the requirement and thus expose the statute, as to federal officers, to the constitutional vulnerability predicted by the *Mesa* Court. Another reading – arguably supported by the sentence's unqualified reference to "a suit" – is that Congress intended to expand the federal defense requirement to the newly added categories of those able to remove under the statute (*i.e.*, to the United States and its agencies). Although the Court considers the former reading more likely, the existence of an alternative reading leads the Court to conclude that this portion of the legislative history is potentially ambiguous.

As noted, the House report includes a third paragraph absent from the Senate report. That paragraph (which the Sixth Circuit did not address) explains that the "official or individual capacity" language of the amendment was added to counter the decisions of several courts that a federal officer sued exclusively in her official capacity could not remove under Section 1442(a)(1). The report complains that "[t]he result of these decisions has been that federal agencies have had to defend themselves in state court, despite important and complex federal issues …." The paragraph concludes with the following: "Note that under the change made in this section, cases would be removable only where federal officers are acting pursuant to a federal law."[19] This sentence may best be read as limiting

---

[18] 1996 U.S.C.C.A.N. at 4211, 1996 WL 520492 at *31; 1996 WL 532692 at *20.

[19] 1996 WL 532692 at *20.

13

the requirement of a colorable federal defense to federal officers. However, because the paragraph addresses suits against officers in their official capacities and seems to equate such suits with suits against the sued officer's agency, it might be possible to construct an argument that the legislative history suggests that agencies also need to assert a federal defense.

The upshot is that the legislative history of the 1996 amendment does not clearly show a congressional intent to require the United States and its agencies to assert a colorable federal defense in order to remove. At most, the legislative history is ambiguous in this regard. Because, as discussed above, the statutory language is clear and is made more so in light of Congress's awareness of *Primate* when it crafted that language, the amendment's ambiguous legislative history can work no change in the statute's construction. *National Association of Manufacturers v. Department of Defense*, 138 S. Ct. 617, 634 n.9 (2018) ("[A]mbiguous legislative history cannot trump clear statutory language.") (internal quotes omitted); *accord National Labor Relations Board v. SW General, Inc.*, 137 S Ct. 929, 943 (2017); *Milner v. Department of the Navy*, 562 U.S. 562, 572 (2011).

Because Section 1442(a)(1) allows the United States to remove regardless of whether the suit against it relates to any act under color of office and regardless of whether the United States asserts a colorable federal defense, the plaintiff's motion for remand is due to be denied. As discussed in Parts II.C and II.D, however, the plaintiff's motion would be denied even were removal as restricted as the plaintiff contends.

**C. "Act under Color of Such Office" Forming the Basis for Relief.**

The plaintiff denies that the complaint alleges any act by the United States, much less any act made the basis for the plaintiff's requested relief. (Doc. 5 at 3-4).

In support of its "basis for relief" position, the plaintiff relies on a single District Court opinion predating the 2011 amendment to Section 1442(a)(1). (Doc. 5 at 3-4). When that case was decided, Section 1442(a)(1) limited removal to cases "against" a removing defendant "for any act under color of such office."[20] Under such a regime, it is reasonable if not inescapable that the act for which the defendant is sued must be the basis for the relief requested.

The 2011 amendment, however, which brought Section 1442(a)(1) to its current form, radically altered the quoted language. That amendment expanded the first phrase to "against *or directed to*," and it changed the latter phrase to "for *or relating to* any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). As Section 1442(a)(1) now reads, the governmental act need only "relat[e] to" the civil action; it need not be the basis for the relief demanded. The Third Circuit has given the statutory term its ordinary, broad meaning of a "connection" or "association." *In re: Commonwealth's Motion to Appoint Counsel*, 790 F.3d 457, 471 (3rd Cir. 2015). The plaintiff, which ignores the "relating to" statutory language, offers no alternative definition.[21]

The Court accepts for argument's sake the plaintiff's unlikely assertion that Section 1442(a)(1) permits a plaintiff to preclude removal by the simple expedient of not expressly alleging the removing defendant's relation to the lawsuit. In this case, however, the complaint plainly identifies a governmental act related to the lawsuit. Specifically, the complaint expressly alleges that the United States "claims an interest" in the subject property as a result of Ruan's judicially imposed restitution obligation. (Doc. 1-3 at 11-12). The United States' assertion of an

---

[20] *See* note 6, *supra*.

[21] Because Section 1442(a)(1) is clear in this regard, it is unnecessary to consult legislative history. That history, however, does underscore that "or relating to" was added with the intent "to broaden the universe of acts that enable" removal. H.R. Rep. 112-17(1), *reprinted in* 2011 U.S.C.C.A.N. 420, 425, 2011 WL 692207 at *6 (Feb. 28, 2011).

interest in the property is surely an act,[22] and that act clearly relates to the plaintiff's civil action, since it is what prompted the plaintiff to seek a judicial ruling that its lien is superior to the government's asserted interest.

### D. Colorable Federal Defense.

The plaintiff's third and final argument is that the United States cannot raise a "colorable defense arising out of its duty to enforce federal law." (Doc. 5 at 3). The *Mesa* Court appears to have used this language interchangeably with "colorable federal defense"[23] but, to the extent the two phrases carry distinct meanings, the United States satisfies them both.

The United States defends the plaintiff's demand for a judicial determination that the plaintiff's lien has priority over any interest of the United States with the assertion that it has the legal obligation to enforce the restitution order; that it fulfilled this obligation by filing the notice of lien; and that, by virtue of that filing, its lien primes any lien of the plaintiff. (Doc. 7 at 2, 5-7; Doc. 8 at 7-12).

---

[22] The complaint does not articulate how the United States claimed an interest, but the plaintiff does not dispute the United States' statement that it filed a notice of lien over a year before this action was filed and that, prior to filing suit in October 2018, plaintiff's counsel conferred with government counsel regarding the United States' interest in the subject vehicles. (Doc. 8 at 2, 4 n.3). It is thus plain that the complaint asserts not merely an uncommunicated or merely verbal claim but a claim denoted by filing a notice of lien. Such conduct is unquestionably an "act" under Section 1442(a). *Vandagriff v. White*, 640 F. Supp. 2d 1371, 1372 (N.D. Okla. 2009).

[23] The Supreme Court in *Mesa* reviewed a number of its precedents dealing with the issue of federal officer removal, including *Willingham v. Morgan*, 395 U.S. 402 (1969), which the *Mesa* Court quoted for the proposition that the removal statute was "broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law …." 489 U.S. at 133 (internal quotes omitted). The *Mesa* Court concluded from its review of its precedents (including *Willingham*) that "we have not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense." *Id*. at 129.

The United States unquestionably has the duty to enforce federal law regarding restitution obligations. Once a certified copy of the restitution order is transmitted to him or her, "[t]he Attorney General shall be responsible for collection of an unpaid … restitution …." 18 U.S.C. § 3612(c); *see also id*. § 3771(a)(6) ("A crime victim has … [t]he right to full and timely restitution as provided in law."); *id*. § 3771(c)(1) ("Officers and employees of the Department of Justice … shall make their best efforts to see that crime victims are … accorded … the rights described in subsection (a).").

"In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution." 18 U.S.C. § 3613(f). Section 3613(c) declares that a lien arises immediately upon entry of a judgment that includes an order of restitution, and Section 3613(d) provides for the filing of a notice of lien and describes the consequences for priority of such a filing. The United States asserts that, by the filing of this notice of lien, the restitution order took priority over the plaintiff's warehouse lien.

Based on the above, it is clear that the United States has asserted a defense (lien priority) arising out of its duty to enforce federal law (the duty to enforce restitution orders, including by filing notices of lien). The plaintiff offers no argument to the contrary.

Instead, the plaintiff argues that the question of priority is "to be resolved under State law." (Doc. 9 at 3). If the plaintiff were correct, the United States might be unable to assert a "federal defense" to the plaintiff's claim of lien priority. The plaintiff, however, is not correct. A restitution lien is "treated as a liability for a tax assessed under the Internal Revenue Code" and, "when recorded …, the lien ha[s] the same effect as a federal tax lien …." *United States v. De Cespedes*, 603 Fed. Appx. 769, 771 (11th Cir. 2015) (citing 18 U.S.C. § 3613(c), (d), (f)). Thus, in assessing priority, "[a] restitution lien [is] entitled to equal treatment as [a] federal tax lie[n] …." *Id*. "[O]nce the tax lien has attached to the

taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's property or rights to property." *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960) (internal quotes omitted); *accord Old West Annuity and Life Insurance Co. v. Apollo Group*, 605 F.3d 856, 861 (11th Cir. 2010).

The only remaining question is whether the United States' federal defense is colorable. The plaintiff, which erroneously assumes there is no federal defense presented, does not effectively address this issue. Because *Mesa* described Section 1442(a)(1) as a jurisdictional statute, 489 U.S. at 136, and because jurisdictional defects require remand regardless of objection, 28 U.S.C. § 1447(c), the Court reaches the question despite the plaintiff's silence.

The standard for a colorable federal defense is low. "In construing the colorable federal defense requirement, we have rejected a narrow, grudging interpretation of the statute …. We therefore do not require the officer virtually to win his case before he can have it removed." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). "The colorable federal defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135, 1145 (11th Cir. 2017) (internal quotes omitted). The United States' federal defense easily surpasses this threshold.

"As against a record federal tax lien, the relative priority of a state lien is determined by the rule 'first in time is the first in right,' which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was specific and perfected." *United States v. Equitable Life Assurance Society*, 384 U.S. 323, 327 (1966) (internal quotes omitted). "A state lien is specific and perfected when there is nothing more to be done … – when the identity of the lienor, the property subject to the lien, and the amount of the lien are established," which depends on "the time it attached to the property in question and became choate." *Id*. at 327-28

(internal quotes omitted). "These determinations are of course federal questions." *Id*. at 328.

It is at least colorable under this "choateness doctrine" that the plaintiff's warehouse lien was not specific and perfected on June 12, 2017 (when the notice of lien was filed) because the amount of the lien had not been established.[24] The complaint asserts that the amount of the plaintiff's lien has increased every month, both before and after June 2017, as additional storage charges and other, non-routine, expenses accrue. (Doc. 1-3 at 11-12; Doc. 9 at 2-3). In *United States v. Pioneer American Insurance Co.*, 374 U.S. 84 (1963), the Supreme Court held that a mortgagee's lien for attorney's fees associated with collection efforts following the mortgagor's default was inchoate under the federal rule, even though default had occurred and an attorney had been engaged and had filed a foreclosure action, because the amount of his fee was "uncertain in amount and yet to be incurred and paid." *Id*. at 90-91. Whether or not *Pioneer American* is on all fours with this case, it supports the conclusion that the United States' federal defense of lien priority is at least colorable.[25]

"The choateness doctrine has continuing vitality except to the extent that it is supplanted by express provisions of the Federal Tax Lien Act." *In re: Haas*, 31 F.3d 1081, 1085 n.6 (11th Cir. 1994). That law amended 26 U.S.C. § 6323 to provide for subordination of federal tax liens with respect to certain state lien interests regardless of the choateness doctrine. *Aetna Insurance Co. v. Texas Thermal Industries, Inc.*, 591 F.2d 1035, 1038 (5th Cir. 1979). It does not appear

---

[24] Section 3613(d) specifies that the notice be filed in the same manner as a notice of tax lien under 26 U.S.C. § 6323(f)(1) and (2). The plaintiff asserts, and the Court detects, no defect in the United States' compliance with those requirements.

[25] The United States suggests the key question is whether the plaintiff had been issued a document of title before the United States filed its notice of lien. (Doc. 7 at 7). Given *Pioneer American*, the Court need not consider whether that degree of specificity and perfection is required by the choateness doctrine.

that any of those exceptions (which are made expressly applicable to restitution liens under Section 3613(d)) are in play here.[26]

The plaintiff relies exclusively on a quote from *Southtrust Mortgage Corp. v. Majestic Farms, LLC*, 2007 WL 4463929 (M.D. Fla. 2007). The *Majestic Farms* Court engaged in no analysis but simply announced that a foreclosure action, brought to establish the priority of the mortgagee's interest over the federal agency's judgment lien, did not implicate a colorable federal defense arising out of the agency's duty to enforce federal law. *Id*. at *2 n.11. The Court does not find *Majestic Farms*' conclusion, unsupported and expressed outside the context of Section 3613(d), to be persuasive.

A federal defendant need not "virtually … win his case before he can have it removed," and removal can be proper even if the defendant's federal defense is "ultimately reject[ed]." *Acker*, 527 U.S. at 431 (internal quotes omitted). The Court's analysis is not exhaustive but, given the low threshold for removability and the plaintiff's failure to address the United States' proffered federal defense in any meaningful way, is adequate to show that the defense is at least colorable.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for remand is **denied**.

DONE and ORDERED this 15th day of February, 2019.

                                                    s/ WILLIAM H. STEELE
                                                   UNITED STATES DISTRICT JUDGE

---

[26] The only exception even arguably in play would appear to be that found in 26 U.S.C. § 6323(b)(5), addressing "personal property subject to possessory lien." The plaintiff's warehouse lien may well constitute a possessory lien in some sense, but the statutory exception is limited to personalty subject to a state-law lien "securing the reasonable price of the repair or improvement of such property." The plaintiff's lien is not for the cost of repairing or improving Ruan's vehicles but of storing them. The plaintiff itself appears to insist that Section 6323(b)(5) is not in play. (Doc. 9 at 3).